UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-CIV-60147-COHN/SELTZER

EDWARD BOATENG, individually, as
Personal Representative of the Estate of
LISSETTE ALONSO BOATENG, and
as natural father and legal guardian of
KALEB BOATENG, a minor,

    Plaintiff,

v.

GEICO General Insurance Company,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment [DE 71], Plaintiff's Motion in Limine Regarding Expert Testimony [DE 77], and Defendant's Motion for Summary Judgment [DE 81] (collectively "Motions"). The Court has carefully reviewed the Motions, all of the parties' submissions, and is otherwise advised in the premises.

### I. BACKGROUND

On December 7, 2006, Lisa Rose caused a fatal traffic accident while driving a motor vehicle owned by Martha Rios George ("George"). Lisa Rose and another driver, Lissette Boateng, were both killed in the accident. Kaleb Boateng, the minor child of Lissette Boateng and Plaintiff Edward Boateng, sustained significant injuries in the accident. At the time of the accident, Defendant GEICO General Insurance Company ("GEICO") insured George under an automobile insurance policy providing limits of

$10,000 per person and $20,000 per occurrence for bodily injury liability.

Plaintiff contends that GEICO "failed to timely settle plaintiff's claim against [its] insured by tendering policy limits even though [it] knew it was a clear case of liability and that plaintiff's damages greatly exceeded the policy limits."  DE 71 at 1 ("Plaintiff's Motion").  Consequently, on December 28, 2009, Plaintiff filed a one count complaint in state court alleging bad faith against GEICO.  See DE 1 at 7.  Thereafter, GEICO timely removed the case to this Court, pursuant to 28 U.S.C. § 1441.  See id. at 1.

GEICO does not dispute that its insured was liable for Plaintiff's damages, nor does GEICO dispute that Plaintiff's damages greatly exceeded the insured's policy limits.  Indeed, GEICO contends that it "offered to tender the full $20,000 per occurrence bodily injury liability policy limits to the Plaintiff on December 13, 2006, only one week after the tragic accident.  DE 81 at 2 ("GEICO's Motion").[1]  GEICO further contends that it reiterated the offer on December 19, 2006, "and at that time a GEICO field representative delivered a check for $10,000 to the Plaintiff as tender of the policy limits for claims arising from the injuries to Kaleb Boateng."  Id.

Plaintiff, however, submits that although GEICO offered to pay Plaintiff the policy limits only six days after the accident, GEICO never tendered the policy limits.  See Plaintiff's Motion at 5-6.  According to Plaintiff, "GEICO failed to ever actually tender more than $10,000 until after the present bad faith action was initiated."  Id. at 6.  Specifically, Plaintiff maintains that GEICO's representative "only tendered a check for

---

[1] GEICO's activity log for this claim reflects that GEICO determined on December 12, 2006, five days after the accident, that George was responsible for the accident and that "We Need To Tender Our Limits To Deceased Clmnt . . . And Also To Her Son." DE 81-4 at 5.

2

$10,000 along with two releases, one for Kaleb Boateng and one for the Estate of Liessette Boateng." Id. "GEICO has argued that the reason they failed to tender the second $10,000 was because they wanted to open an estate on behalf of Lissette Boateng before giving him the full $20,000.00." Id. at 7.

Both parties have moved for summary judgment. Plaintiff argues that GEICO proceeded in bad faith by failing to tender policy limits because "an estate being opened is not a pre-requisite to an insurance company tendering policy limits." Id. Alternatively, Plaintiff contends that GEICO proceeded in bad faith because GEICO presented Plaintiff "with a check and release for Kaleb Boateng which if signed and cashed would have as a matter of law extinguished all further claims that Kaleb Boateng already had as a survivor of his mother's estate." Id. at 8. Plaintiff predicates the latter assertion of bad faith on GEICO's tender of only $10,000 to Kaleb Boateng with a release for all of his claims despite GEICO's awareness that "Kaleb Boateng had two distinct claims as a result of the automobile accident, one for the personal injuries he received in the accident and one for the death of his mother." Id. Based on the foregoing, Plaintiff claims entitlement to summary judgment.

Essentially, Plaintiff argues that GEICO, in bad faith, attempted to trick Plaintiff into releasing all claims under the Georges' policy for $10,000 even though the policy limits were $20,000. GEICO, on the other hand, asserts that Plaintiff never attempted to negotiate a different settlement offer. GEICO maintains that it "was trying to settle this claim and that it at all times handled this claim in good faith." DE 81-1 at 15. Defendant therefore takes the position that not only should the Court deny Plaintiff's Motion, but the Court should grant Defendant's Motion. See id.

3

## II. LEGAL ANALYSIS

### A. Legal Standard

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B. No Reasonable Jury Could Find that GEICO Acted in Bad Faith

"The essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment." Maldonado v. First Liberty Ins. Corp., 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008) (citing Auto Mut. Indent. Co. v. Shaw, 184 So. 852, 859 (Fla. 1938)). In Florida, the standard of care for insurers when undertaking the defense of their insureds is as follows:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business . . . . The good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980). The record shows that GEICO complied with each of these duties.

On December 13, 2006, one week after the accident, Margarita Navarro mailed a letter to Plaintiff wherein she introduced herself as the claims adjuster for GEICO assigned to handle Plaintiff's claim. See DE 81-7. The letter indicates that Roma Henning had been assigned as the local claims adjuster for the claim and that Ms. Henning would be "delivering to you our offer of the policy limits in this case." Id. The letter further states that "[e]nclosed you will find a letter of coverage confirming the limits

that our insured had on their policy." Id.  The letter concludes as follows: "It is unfortunate that I have to trouble you with these matters at such a difficult time, but perhaps I can offer you some assistance to understand the claim.  I am available for your contact Monday-Friday from 8am to 4pm." Id.

GEICO's activity log for Plaintiff's claim indicates that Plaintiff called Ms. Navarro and left her a voice message less than a week later on December 19, 2006.  DE 81-4 at 7.  The log further indicates that Ms. Navarro returned the call that same day, that she advised Plaintiff that she was handling the claim, and that GEICO was offering $10,000 for Lissette Boateng and $10,000 for Kaleb Boateng, pursuant to the policy limits.  See id.  Plaintiff, however, does not recall speaking with a GEICO representative on the phone.  DE 81-19 at 14 ("Plaintiff's Deposition").  Notwithstanding, he acknowledges that it is possible he did.  Id.

GEICO claims that "[o]n January 11, 2007, GEICO called Boateng at home and on his cellular phone to inform him that counsel has now been retained to set up the Estate of Lissette Boateng and that additional information would be needed to set up the estate."  DE 81-2 at 3-4.  GEICO further claims that Plaintiff "did not answer GEICO's calls and did not return GEICO's voice mail messages." Id. at 4.  Likewise, GEICO asserts that on January 17, 2007, it attempted to contact Plaintiff on both his home phone and his cellular phone and left messages.  Id.  Plaintiff, in his response to Defendant's Motion for Summary Judgment, "denies that he received any telephone calls or messages from GEICO."  DE 86 at 3.  In Plaintiff's deposition testimony, however, Plaintiff testified that he did not remember if he received any phone calls or messages and that it is possible that he did receive the calls.  See Plaintiff's Deposition

at 17.  Thus, GEICO's statements of fact that it left repeated phone messages for Plaintiff remains undisputed.

Similarly, GEICO sumbits that it prepared and sent a letter to Plaintiff, dated on January 17, 2007, explaining that GEICO was offering the $10,000 per person policy limit for the claim arising from the death of Lissette Boateng.  DE 81-2 at 4.  The letter also explained that GEICO had retained counsel, Leslie Schear, at its own expense to set up an estate for Lissette Boateng so that a personal representative may be appointed to process the settlement of the claim.  Id.  Plaintiff, however, denies receiving the January 17, 2007 letter.  DE 86 at 3.  GEICO states that a copy of the January 17, 2007 letter to Plaintiff was also provided to the Georges and Leslie A. Schear, the attorney retained by GEICO to set up the Estate of Lissette Boateng.  DE 81-2 at 4.  In his statement of facts, Plaintiff denies that he received the January 17, 2007 letter.  DE 86 at 3.  In his deposition testimony, however, Plaintiff admits that he might have received it.  See Plaintiff's Deposition at 25.

The only interaction that Plaintiff recalls having with GEICO occurred when Ms. Henning went to his house on December 19, 2006, less than two weeks after the accident.  See id. at 14-15.  Plaintiff testified at his deposition that Ms. Henning sat down with Plaintiff in his home, apologized for his loss, and presented him with a check along with a release.  See id.  Plaintiff rejected the check and refused to sign the release.  Id.  Plaintiff testified that he did not recall anyone from GEICO explaining to him that GEICO was going to set up an estate for his wife, that an estate attorney would be contacting him, or that a personal representative needed to be named to execute the release and accept a check.  Id. at 16.  Rather, Plaintiff recalls that Ms. Henning

presented him with a $10,000 check, that he asked her if that was "all that I get? And she said, yes." Id. at 15. Thus, Plaintiff believed that Ms. Henning was trying to get Plaintiff to settle his claim for a total of $10,000. Id. at 19.

Despite Plaintiff's subjective believe that Ms. Henning was attempting to settle all of Plaintiff's claims for $10,000, Plaintiff did not express his concerns to Ms. Henning when she visited his house. See id. at 27. Plaintiff also concedes that he never made any attempt to contact GEICO regarding his concerns about the claims process. Id. at 21. Likewise, Plaintiff never asked GEICO "in writing or in person or by telephone for the full $20,000 policy limits." Id. at 30.

Instead, on February 7, 2007, only two months after the accident, Plaintiff's counsel sent a letter to GEICO. See DE 81-11. The letter states as follows:

> I am in receipt of your tender of your insureds' alleged policy limits of $10,000.00 to Edward Boateng, individually and as parent and guardian of Kaleb Alexander Boateng, a minor. Unfortunately, your offer to settle for the policy limits included a requirement that Mr. Boateng execute a "Release of All Claims." Your proposed Release does not reserve Mr. Boateng's right to claim damages against any other person, firm or corporation who may have caused his injuries including, but not limited to, property owners, product manufacturers and distributors and others, or medical care providers who may have been negligent in providing the treatment to the injuries inflicted by your insured.

Id. at 1. The letter further accuses GEICO of attempting "to trick Mr. Boateng into releasing his own claim as survivor of Lissette Boateng." Id. The letter proceeds to inform GEICO that Plaintiff rejects GEICO's offer of the policy limits "due to GEICO's attempt to take advantage of [Plaintiff's] situation before he was represented by counsel." Id. at 2.

Generally, "[t]he question of failure to act in good faith with due regard for the interest of the insured is for the jury." Boston Old Colony Ins. Co. v. Gutierrez, 386 So.

8

2d 783, 785 (Fla. 1980). Nonetheless, many courts presented with motions for summary judgment in bad faith cases have determined, based on the record before them, that no reasonable fact finder could find the insurer acted in bad faith. See, e.g., Maldonado v. First Liberty Ins. Corp., 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008) (Jordan, J.); see also Johnson v. Geico Gen. Ins. Co., 318 Fed. App'x 847 (11th Cir. 2009); Aboy v. State Farm Mut. Auto. Ins. Co., 22 Fla. L. Weekly 163 (S.D. Fla. 2010); Shin Crest Pte, Ltd. v. AIU Ins. Co., 605 F. Supp 2d 1234 (M.D. Fla. 2009); Clauss v. Fortune Ins. Co., 523 So. 2d 1177, 1178 (Fla. Dist. Ct. App. 1988); Caldwell v. Allstate Ins. Co., 453 So. 2d 1187, 1190 (Fla. Dist. Ct. App. 1984).

Here, there is no evidence in the record that GEICO failed to inform George, its insured, of settlement opportunities. Nor is there evidence in the record that GEICO failed to advise George about the probable outcome of the litigation. Cf. Berges, 896 So. 2d at 680. Furthermore, there is no evidence that GEICO sought to avoid settling Plaintiff's claims for the policy limits.

There is ample evidence, however, that GEICO promptly contacted both its insured and the tort victim, undertook an investigation to determine liability, provided Plaintiff with the insured's policy limits, informed Plaintiff that GEICO was going to tender the full policy limits, visited Plaintiff at his home to provide him with a $10,000 check for his son Kaleb's injuries, and retained an attorney on Plaintiff's behalf to open an estate for Lissette Boateng so that GEICO could tender the policy limits for her death. Thus, based on the factual record before the Court, the undersigned finds that no reasonable fact finder could determine that GEICO acted in bad faith.[2]

---

[2] Even if Ms. Henning told Plaintiff that the $10,000 check she took to his house was meant to settle the claims for both Kaleb Boateng's injuries and Lissette

9

The Court is not unsympathetic to the incomprehensible grief that Plaintiff must have experienced, and continues to experience, in the aftermath of the tragic accident that took his wife's life and injured his son.  Nonetheless, GEICO initiated settlement negotiations with Plaintiff and Plaintiff did not respond.  Instead, Plaintiff retained an attorney whose first move was to file a bad faith claim against GEICO.[3]

## III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 71] is **DENIED**;

2. Plaintiff's Motion in Limine Regarding Expert Testimony [DE 77] is **DENIED AS MOOT**;

3. Defendant's Motion for Summary Judgment [DE 81] is **GRANTED**;

4. The Court shall enter a separate final judgment.

5. The Clerk shall **CLOSE** this case and **DENY** any pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 22nd day of November, 2010.

_/s/ James I. Cohn_
JAMES I. COHN
United States District Judge

Copies provided to counsel of record.

---

Boateng's death, Plaintiff offers no authority that such behavior constitutes bad faith on the part of GEICO directed towards its insured, Martha Rios George.

[3] Plaintiff cites two cases to support his motion: Powell v. Prudential Property & Cas. Ins. Co., 584 So. 2d 12 (Fla. Dist. Ct. App. 1991); Snowden v. Lumberman's Mut. Cas. Co., 358 F. Supp. 2nd 1125 (N.D. Fla. 2003).  In both of those cases, insurers failed to engage in settlement negotiations with tort victims.  Here, GEICO did contact Plaintiff shortly after the accident to begin the process of settling Plaintiff's claim.  Therefore, the cases cited by Plaintiff do not aid his cause.